v. Central Intelligence Agency Mr. Latimer Richard Latimer Richard Latimer is an American scientist. He is educated and trained in physics. He is the owner of a small business which manufactures electronic monitoring devices for environmental research. His interest in this case is purely non-professional. Although his reason for looking into this is as a scientist, he perceived, and we would argue quite correctly, that the CIA's explanation of the use of electronic monitoring devices What happened to TWA Flight 800 back in 1996 made absolutely no sense. Contrary to all the evidence, hastily contrived, ignoring evidence when the problems with that evidence, not with the radar tracking data, was called to their attention. We're ready for you to begin your argument. Oh, I'm sorry, I thought I had. I think there are two issues here. This case involves an investigation into the crash of TWA Flight 800 back in 1996. It occurred over Long Island Sound. The CIA and the FBI were brought in to the investigation to assist the National Transportation Safety Board, NTSB, on the possibility that there may have been some criminal or terrorist involvement in that crash. That was the role, and the limit of the role, of the CIA and the FBI. It was the NTSB's responsibility to determine what did cause the crash. These other agencies were charged only with determining what did not cause the crash, or if it was a terrorist bomb, then what did. The evidence produced through this investigation clearly did rule out any terrorist activity. That is because they only... Just on the FOIA claim, the actual document, could you just spell out quickly what's the best argument as to why the documents need to be released? Very well. It is claimed that this is a pre-decisional document. Now, pre-decisional refers to documents that relate to policy. That's clearly spelled out in the Providence Journal case cited by the government. This issue had nothing to do with policy. This is a document referenced specifically to factual questions. Whether the CIA's purported explanation of what happened to this plane was factually supported by the data they were looking at. In this case, the radar data, but there was a wealth of other data, metallurgical data, missile expert analysis, eyewitness data, including the eyewitness testimony of some very highly competent ex-military men, who clearly described a missile. But the evidence, and correctly from the CIA's point of view, not a man-pad. That is a man-portable air defense missile, such as you launch from a shoulder. What the evidence did show, however, was that the most likely cause of this accident was an American military missile that exploded above the plane, not below the plane as a man-pad would. Exploded above the plane. Judge Saylor, in his decision, made a point of saying this case is not about what did or did not happen in this accident, what does or does not explain it. Judge Barron was with all due respect trying to get you to focus on why you think Judge Saylor was wrong with respect to his handling of Exemption 5. So why don't you address that? Because he was attributing to us the wrong burden of proof. We agree, we're not here to establish what did or did not bring down the plane. What we are here to establish, not being under reasonable doubt, not even by a preponderance, but by a likelihood that the government may have engaged in a cover-up of what happened. That's why all this other evidence is relevant. Not to prove what happened to TWA Flight 800, that's not our burden. So you're arguing that your claim of governmental misconduct really overrides all of the exemptions that the government invoked here as to why it should not have to disclose? Well, Your Honor, that's true, but we also say those exemptions don't apply. That's what I started out arguing. This wasn't a pre-decisional document to begin with. These aren't pre-decisional documents. But yes, getting to the next step of the argument... Well, but the government says yeah, I gather these two reports that you're trying to get at they were done after the CIA simulation was shown on CNN, but I thought the CIA was clear that they were still open to other possible explanations, and this additional data was collected in pursuance of that possibility that there might be yet another explanation. That openness was specifically based on pending the NTSB's final report. And the NTSB's final report came out and that meant that the CIA's investigation and the FBI's investigation had ended. Even if this was deliberative in your view? Excuse me, Your Honor? Even if these documents are deliberative in your view, they still have to be disclosed because they're not pre-decisional? No, even if they were pre-decisional, because they were made as part of a cover-up malfeasance by the government. And that's where we get into the evidence, the factual evidence. We don't decide these cases, they shouldn't be decided in a factual vacuum, they can't be. You say there's no... They already have made their decision? Yes. Okay, so what do you think they're doing when they're having these, producing these documents? What happened was they had, this wasn't a vast conspiracy as Judge Saylor said, he again mischaracterized what we are saying. This was a small top level among three directors, a small agreement for a cover-up and we know that because after the CIA had produced its video, and there was a, NTSB's hearing was scheduled, they agreed not to call any of the recipient witnesses, just none of them. What were they producing the documents for, in your view? What was the purpose of the production of the documents? Why were they doing it? As explained in the brief in this case last point, this was an attempt to explain, and perhaps to revisit, to bolster their false claim after the NTSB witness chairman revealed the eyewitness testimony. They were expecting that this was just going to sail through. We're not going to have any witnesses testify, we're just going to go with the CIA's video, but I believe the name was Weiermeier, or Westermeier, nonetheless was angry at the cover-up. He released to the press the names of the witnesses. So they went to the extraordinary end of dismissing him as the witness chairman, bringing in Mr. Meier, who was the CIA link between NTSB and CIA, who then proceeded to disparage every witness who testified, telling the hearing that these witnesses who were Pacific witnesses, 95 of them on the ground, 6 of them in the air, including very competent ex-military men who described specifically a military missile exploding, that they all had false memories, that they were perhaps inadvertently just falsifying what they saw. This was an obvious cover-up, Your Honor. These documents, we're talking about these government is characterized as pre-decisional. Doug Saylor asked the question, well, if you got these documents, what light would these specific documents shed on the governmental misconduct cover-up that you claim? So what is the answer to that? I would suggest, Your Honor, they would show that they were trying to try to rationalize a second review of the radar data with what they had depicted, and they couldn't do it. And that would be very relevant, Your Honor. It would be part of the cover-up, the initial cover-up. So, it's your belief that these reports would undermine the theory that led to the simulation that was then shown on CNN? That's your point? Again, I would point out the case law that holds that documents that are generated simply to explain a decision already made are not protected as pre-decisional, and that's what we are claiming these documents are. And again, they had nothing to do with policy. When we're talking about the pre-decisional exemption, we're talking about policy questions. These are not policy questions. These are issues of fact. Experts looking at factual data, forming expert opinions of the type that is routinely disclosed in this in the lower court under Rule 26. Just as a simple way of thinking about this problem, government takes an action. After the action is taken, they decide, you know, let's take another look at it. Just among ourselves and see if we think we've got it right. When they do that, that has to be disclosed? If it is trying to explain another document, especially in the context of what happened, they did not expect that eyewitness testimony to come out. And when that eyewitness testimony came out, well, let's just say the stuff hit the fan, because now their explanation of what they say the witnesses saw was clearly discredited. So it wasn't simply, let's take another look. It was clearly an effort to and again, Your Honor, it's not... That goes to the misconduct, I understand that. But I'm talking about the pre-decisional and deliberative. And just whether it is deliberative or pre-decisional, why when the government says let's take another look at it isn't engaged in a deliberative exercise to figure out whether they got it right the first time? Without conceding that point, let me just get back to the main point, which is that looking at the case as a whole, and all our burden here is to show something like probable cause, certainly not preponderance of the evidence even. And this is where Judge Saylor got our position wrong. Something like probable cause, whether a reasonable mind could conclude that the government might have been doing something wrong here. I would suggest, based on the evidence we've produced, that we would meet the probable cause standard, if not the beyond a reasonable doubt standard. But that wasn't our burden. And I would suggest, therefore, that under the possibility, reasonable possibility standard that governs when you're determining whether there was some kind of malfeasance leading to this investigation, that we have clearly met that burden of proof. And that, therefore, the deliberative process and all the other privileges are waived, including the eyewitness testimony privilege. They are waived. It seems to me there is still a large legal question that Judge Saylor identifies as to whether this misconduct theory that you're propounding, whether it overcomes these exemptions. He takes some care to point out that that's still very much an open question. We've certainly never taken that position in this circuit. Isn't that correct? Well, Your Honor, my time is up. I will simply say I have briefed that issue. I disagree with Judge Saylor. I think that was an error. He was simply talking about the waiving of the pre-decisional exemption and not the government has an argument argued otherwise and not the other exemptions that they've asserted. So, thank you. May it please the Court, Patrick Nemeroff on behalf of the CIA. The very same documents for issue in this case were determined to be exempt from disclosure under the Freedom of Information Act by the Ninth Circuit and LAR, an opinion written by Judge Berzon. The District Court here wrote a very thorough opinion reaching that same conclusion and the conclusion is fully supported by the record in this case and by the law of this circuit. I'd like to begin with the documents that were withheld under Exemption 5. Exemption 5, of course, protects any documents that would not normally or routinely be disclosed in civil discovery. And here the CIA withhold these under the Delivered Process Privilege. In order to fall under the Delivered Process Privilege, the documents must first be pre-decisional and they must be delivered of both documents here met that test. Those two documents were first a 17-page draft report containing preliminary analysis concerning new radar tracking data and second an 18-page draft report containing analysis and preliminary conclusions regarding further assessment of the flight path. Those documents were pre-decisional because the CIA had an ongoing responsibility to determine whether the eyewitness reports were consistent with a terrorist attack on the plane. That obligation continued after the FBI disclosed the CIA's video. And if I can just make one factual matter clear, the NTSB did not complete its report until years after these documents were prepared. So it was not only pre-decisional to the CIA's determination but also to the NTSB's ultimate determination. They're also deliberative. Plaintiff has stated that because they include factual analysis, they're not deliberative, but that's contrary to a number of cases that all conclude correctly that factual analysis can be deliberative. In fact, this court in Providence Journal was considering an investigative report into the facts of possible criminal activity and held that it was deliberative. Now, Plaintiff's primary argument is that there should be an exception to Exemption 5 because he has alleged government wrongdoing here. And I'm happy to explain why he has not met sort of any meaningful standard in showing that there was wrongdoing, but I'd like to focus first on the fact that no Court of Appeals ever has recognized an exception to Exemption 5 for alleged government wrongdoing, and there's good reason for that. The government's position is that the district court decision in the Nixon case is wrong? So that is the one court that's ever applied it. And your position is that's wrong? That's correct, Your Honor. It's wrong. It also, I would say, applies a very narrow rule, which in the Nixon case it could be read to say that those documents were never even deliberative in the first place because the documents were prepared in an effort that simply would lay beyond the agency's authority, and so were therefore ultra-virus. By contrast here, what Plaintiff has said would shed light on some wrongdoing, and that can't be enough. The CIA's action clearly did fall within its authority. It had authority to assist the FBI in order to determine whether there might have been terrorist activity here. So the Nixon case, to the extent it was saying there was an exception, it was wrong. To the extent it was more narrowly saying that there's sort of an ultra-virus, where there's ultra-virus action, it wouldn't even be deliberative or pre-decisional in the first place. That may be correct, but it would be a far narrower rule than what the Plaintiff has sort of put forth here. Yes, I guess I would like you to explain why you think it would be a... I mean, the government misconduct rule is well established in civil litigation where the government is a party. In a sense, the government is a party here in the sense that it has all this information that is subject to the Freedom of Information Act. Why shouldn't that rule that's good enough for civil litigation, why shouldn't it apply here? There are a couple reasons. First of all, as the Supreme Court has recognized and this Court has recognized, Exemption 5 protects those documents that normally or routinely would not be disclosed. The government misconduct exception in civil discovery is just that. It's an exception. So it's not the normal rule. And what the Supreme Court said, for example, in Sears Roebuck is the application of Exemption 5 cannot turn on what any private individual might be able to obtain in civil discovery. It has to turn on the normal application and there's a good reason for that as a matter of policy, which is that FOIA needs workable rules that both courts can apply, but also that agency officials can apply in determining whether or not to disclose documents in response to a FOIA request. Now, there are a couple other reasons also why that exception shouldn't extend to FOIA. Why would a government misconduct rule complicate the task of the government in trying to comply with FOIA? I don't understand that. Well, if there were that sort of exception to the Deliverable Process Privilege, then it would be incumbent upon the CIA official responding to the FOIA request in this case to go out and sort of investigate, is there some possibility of misconduct here? Does this document shed light on that misconduct? So that's a whole other inquiry beyond what the officer would normally be doing in responding to the FOIA request, which is simply to determine, is it responsive, is it deliberative, and is it pre-decisional? It's quite a lot more work. And the Supreme Court has recognized that we need workable rules, not necessarily in this context, but for example, in the attorney work product context, where one can make the exact same argument, well, there are exceptions to attorney work product if that case which the document was prepared for is no longer an act of litigation. But the Court has said, no, that exception in civil discovery is not going to extend to FOIA. Secondly... So the government's position would be even a crime-fraud exception to the attorney client privilege would not apply in FOIA? I believe that's right, Your Honor. So an exception, FOIA protects things... That's a pretty sweeping conclusion. In other words, there's no way this you're taking with respect to the deliberative, the exception not being available, misconduct exception not being available here, would be not easily contained to this context. It would rest on a logic which would wipe out possible limitations on almost every exemption. Well, under Exemption 5. So to be clear, this is limited to Exemption 5. But why would it only be limited to that in the sense that if the rationale is how workable is it for the person to respond to the FOIA request? If you're saying that you've got to look behind the request and try to figure out anything, then it's going to be too much work and we shouldn't import it. Well, I can't speak to all of the various exemptions, but we can compare Exemption 5 to the Favish test, which plaintiff is essentially trying to import into this context. Exemption 7C contains a balancing test in its very language. So it says the government can protect documents that would unreasonably disclose private information. So that unreasonably includes this balancing test where you would weigh these interests. Exemption 5, by its language, and the way the Supreme Court has interpreted it, it is a categorical rule, and that is specific to Exemption 5. So that's precisely why you can't take these exceptions and bring them into sort of the categorical context of Exemption 5. Another reason why you wouldn't bring that exception into this context comes from this circuit's ruling, Texaco-Puerto Rico, in which it found the government wrongdoing exception to deliver process privilege. And one important factor that the court weighed in finding that exception was the due process concerns that the civil litigant had in obtaining that information in order to press his claim. But that's very different from the FOIA context. A FOIA requester does not have a due process interest in pressing a particular claim. In fact, to the contrary, what you see in a case like this is a FOIA requester uses the vehicle of FOIA to serve as sort of a proxy litigation for the claim that they have not brought as a separate civil action. And if they want documents relevant to that sort of wrongdoing, they need to bring an actual action asserting claims and then obtain the documents in that setting after they've passed certain bars, for example, motions to dismiss. You can't use FOIA to get yourself there. A third reason to distinguish between civil discovery and FOIA is that in civil discovery, if a judge does order a document released, the judge can enter a protective order and say this document is only released to this civil litigant. Your argument seems very odd in the sense, I mean, what is this I guess is a large generality, but basically FOIA is all about sort of casting a light on the work of the government. It allows citizens to make a judgment about how the government is performing. I mean, that's, isn't that the underlying purpose of FOIA? That's certainly the purpose and at the same time. Then how can it be that the issue of possible government misconduct cannot factor into the analysis as to whether certain exemptions can be invoked? It seems an odd position and contrary to the very purpose of FOIA. Well, FOIA serves two purposes. First, it offers transparency to the public. Certainly that's true. But at the same time, it protects the government and it protects agency officials so that they can perform their work. And the delivery of process privilege in particular ensures that government officials can perform their work without fear that they're going to be subject to undue scrutiny when they're forming their preliminary judgments. Now certain aspects of FOIA, for example, going back to 7C, do incorporate a balancing test and do say we will balance the public interest that would be served by disclosure against the privacy interests at issue. Exemption 5 does not do that and Congress could have written in a balancing test to Exemption 5, but it did not do so. It created a categorical rule and the reason it did so was to provide this level of assurance to agency officials when they're performing their work. And as soon as you start reading exceptions into the delivery of process privilege, those officials don't have the same, can't operate with the same level of coverage. Do we get to the same point, though, if we accept what I thought was your recognition that maybe there is an ultra-virus exception? So if you took this case in the vein that the alleged claim is that what's going on is a cover-up of government attempt to shoot down a civilian airliner, I suppose we'd be in a bit of a tough spot to say that that's fine kind of misconduct to engage in. So in some sense we're just back to the question you were going to get to about what needs to be shown, even assuming there might be an ultra-virus exception or a misconduct exception, in order to found an allegation under FOIA that these documents would fall into whatever limited universe that might be. I think there is a real difference between the Favish test and an ultra-virus test. Under the Favish test, for example, the document just needs to shed light on misconduct. So you might allege, and the plaintiff here has alleged that there is a conspiracy and can say, well, these documents might help me show that there's a conspiracy. And maybe under Favish, if the plaintiff had meaningful evidence, that might satisfy a public interest. Although it doesn't in this case, to be clear. But under the ultra-virus test, you would have to say that that agency action itself exceeded the agency's authority. And there cannot be any claim here that the CIA did not have authority to conduct the analysis that was contained in these documents. The CIA was asked by the FBI to assist it in determining whether these eyewitness reports were consistent with an act of terrorism that plainly falls within the CIA's authority and the plaintiff hasn't alleged otherwise. So that's where the two tests would be different, and the ultra-virus test would be quite a bit narrower. Now, neither test is satisfied here. Three separate investigations reached the same conclusion. The NTSB, when it delivered its report, made over 3,000 pages available to the public. The summaries of 700 FBI interviews were made available to the public. In response to this FOIA request, the CIA made 198 documents that totaled well over 1,000 pages available to the public. There's quite a bit of information out there, and the plaintiff has not raised anything even close to meaningful evidence that there was a conspiracy here. What would count as meaningful evidence, since they haven't seen the document? Well, they have seen... The two documents they want, presumably, they haven't seen. Well, that's true, Your Honor, but... So what would they need to show as a predicate? What's the kind of thing that you have in mind? I think in this case, where there are so many thousands of pages available, you would expect some sort of smoking gun, for example, some indication that somebody actually had a motivation to conduct some sort of cover-up. The only thing the plaintiff has pointed to are discussions between various agency officials about, you know, how to interpret the facts. And those are exactly the sorts of discussions you would expect in this sort of incredibly large and complex investigation. This was the largest investigation the NTSB ever conducted. And so you would expect some individuals to question conclusions and then the other agency to come back and explain why they reached those conclusions. That's exactly what the plaintiff has pointed to. That certainly is not the type of evidence we would require before finding an exception to one of these exemptions. The National Transportation Safety Board, it basically adopted the CIA's theory of what happened here, that is, the explosion in the gas tank on the wing. Is that correct? They reached the same conclusion, although the NTSB conducted an independent and lengthy process to get to that conclusion. Right, but the appellant here is contending that these two documents that he seeks, it's his belief, he hasn't seen them, it's his belief that those documents do not support that theory of what happened here. And that's the very reason, not that they're pre-decisional or that they're deliberate, but he says that's the reason they don't want to disclose them. Now, how else can he show that that's what's going on here, other than to say there are other theories about what happened here, the government is committed to this theory, they have documents in their possession that undermine their theory. If I can get my hands on it, I can show that there's evidence that undermines their theory. Why shouldn't that be good enough to get at it? Even if we accept his premise and we say these documents may contain some evidence that is somehow contrary to the government's ultimate conclusion, even that would not meet the standard of shedding light on government wrongdoing. A pre-decisional document, a deliberative document, might in some ways be inconsistent or have not fully consistent with the ultimate government final agency action, but that doesn't show government wrongdoing. And to be clear, that's all that Planoff has alleged. Planoff has not alleged that these documents contain some internal discussion reflecting an effort to conceal what actually happened. He's simply said that these documents may be somehow inconsistent with that result. But that would not be enough. Any further questions? Thank you. It's useful to think by analogy to Federal Civil Procedure Rule 26, mandatory disclosures. Let's suppose this wasn't the CIA and NTSB, this was General Motors, and there was a series of faulty fatal accidents resulting from a particular part in their motor vehicle. And they conducted, through their experts, an in-house investigation, technical investigation. I would submit that would be no lawyers involved, that would be discoverable. That's this case. What we have here is a fact-based investigation into having nothing to do with policy, not even as close as would be in the civil case of General Motors as to whether they're going to change their manufacturing standards. That might even touch on policy. This touches not on policy at all. We are not here talking about a conspiracy theory. Again, the government misrepresents it. We're talking about starting with a snafu. Situation normal all follows up. That comes out of the military. That's what we're saying happened here. That's what the evidence says happened here. And then there was a cover-up, and that is all too typical of what happens when the military commits a snafu. There's always a cover-up, and that's all we're saying here. We're not talking about a vast conspiracy. In fact, when we look at the vast number of people involved in this investigation, many of them, some of them have come forward with the lawyers to talk about, and this is in the brief, talk about the cover-up. So this is not a vast conspiracy. Again, it's the three top-level directorates deciding that they're going to participate in a cover-up, not a conspiracy. We're not even suggesting that there was a deliberate attempt by the military to take this plane down. It doesn't have to be deliberate. Why would they want to cover this up? Well, let's suppose a highly placed defense contractor, there was a screw-up on their guidance system. That would explain the cover-up. We're not talking about anything preposterous or outlandish, but the evidence of a cover-up is, I would suggest, if we had to make that by reasonable doubt or beyond a reasonable doubt, we would even meet that in front of a jury. Counsel, you talk about whistleblowers. Has anybody ever come forward to say that they participated in a military exercise involving an errant missile? No, Your Honor, I'm talking about whistleblowers within the agency coming forward and saying that they deliberately ignored evidence, they falsified evidence to reach their preconceived conclusion that was the cover-up. The preconceived conclusion was that the plane did something that the radar data disproved, and we're saying that the second review of the radar data would confirm that. Thank you, Your Honor.